IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Keith Watts,** | ) |
| **Plaintiff,** | ) Case No. |
| v. | ) TRIAL BY JURY DEMANDED |
| | ) FILED: JULY 15, 2008 |
| **Pickens-Kane Moving & Storage Co., Michael F. Munroe Jr., and Joe Bekken,** | ) 08CV4011 |
| | ) JUDGE KENNELLY |
| | ) MAGISTRATE JUDGE ASHMAN |
| **Defendants.** | ) |
| | ) PH |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

NOW COMES Keith Watts, by his attorneys, Law Offices of Johanna J. Raimond Ltd., and complains against defendants as follows:

1. This is a race discrimination in employment action brought under 42 U.S.C. § 1981 ("Section 1981") against Pickens-Kane Moving & Storage Co., Michael F. Munroe Jr., and Joe Bekken. In addition, plaintiff raises retaliatory discharge, defamation, and tortious interference with business expectancy claims against Pickens-Kane and a battery claim against Joe Bekken.

**JURISDICTION AND VENUE**

2. Count I is brought against under Section 1981 and against all defendants. This Court has jurisdiction over this claim under 28 U.S.C. §§ 1331 and 1343.

3. Count II (retaliatory discharge), Count III (defamation) and Count IV (tortious interference with business expectancy) are brought against Pickens-Kane under Illinois law. This Court has supplemental jurisdiction over these Illinois claims pursuant to 28 U.S.C. § 1367.

4.      Count V is a battery claim brought against Joe Bekken. This Court has supplemental jurisdiction over the battery claim pursuant to 28 U.S.C. § 1367.

5.      Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the conduct giving rise to the claims took place in this judicial district.

## PARTIES

6.      Plaintiff Keith Watts is a citizen of the United States and the State of Illinois. He resides in Berwyn, Illinois. Plaintiff was employed for Pickens-Kane Moving and Storage Co. from approximately 1996 until 1999 and then again from 2005 until he was terminated in June 2007.

7.      Defendant Pickens-Kane Moving and Storage Co. is an Illinois corporation with a principle place of business in Chicago, Illinois. It provides full service professional and residential relocation services.

8.      Defendant Michael Munroe is a citizen of the Unites States and the State of Illinois. He was a corporate officer and one of the owners of Pickens-Kane at all relevant times.

9.      Defendant Joe Bekken is a citizen of the Unites States and the State of Illinois. He was a sales employee of Pickens-Kane at all relevant times.

## SUMMARY OF FACTS

10.     Plaintiff worked for Pickens-Kane from 1996 through 1999, when he resigned to take another job.

11.     Plaintiff rejoined Pickens-Kane in approximately April 2005.

12.     Within approximately two months of rejoining Pickens-Kane, plaintiff was promoted to supervisor.

13. Plaintiff supervised anywhere from nine to twenty-five employees in office and hotel relocation projects across the Chicagoland area.

14. Upon information and belief, plaintiff, who is black, was paid less than the white supervisors.

15. In June 2005, plaintiff approached his direct supervisor, Tony Drapak, who was white, to request an equal wage.

16. As a result of plaintiff's complaint to Tony Drapak, Pickens-Kane increased his salary. However, on information and belief, plaintiff was still paid less than white supervisors.

17. Plaintiff did not receive formal performance reviews. However, his superiors and clients regularly gave plaintiff positive feedback about his work.

18. In fact, Mike Munroe once called to congratulate plaintiff on his excellent work performance.

19. On June 22, 2007, plaintiff was supervising an office relocation at a client's office in downtown Chicago, Illinois.

20. Plaintiff and his crew prepared the office for relocation by packing up the furniture and files.

21. Plaintiff reviewed the site with the client representative, who stated she was satisfied with the way the items were packed.

22. Plaintiff and his crew prepared the site ahead of schedule; there was approximately one hour before the truck arrived to remove the packed furniture and files, and deliver the incoming office items.

23. Plaintiff left two men with the client in case she needed anything further and told the rest of his crew they could break until 4:45, which was 15 minutes before the truck was scheduled to arrive.

24. When plaintiff returned to the client site, the incoming furniture still had not arrived.

25. Pickens Kane sales employee Joe Bekken had arrived on the site.

26. Bekken was angry that plaintiff and his crew had left the client site to take a break rather than waiting for the incoming truck.

27. Bekken started berating plaintiff, using expletives, because plaintiff let his crew take a break.

28. Bekken accused plaintiff of giving his crew a break when the client site was not prepared for the incoming furniture.

29. In fact, the client site *was* prepared for the incoming furniture.

30. Plaintiff walked up with Bekken to the client's office to show him that the site was prepared.

31. Plaintiff also took some pictures of the site with his cell phone.

32. Having seen that the site was prepared, Bekken said nothing further about it.

33. Instead, Bekken ordered plaintiff to start moving the items to the truck.

34. Plaintiff said alright and Bekken responded, in a condescending tone, to "lose the fucking attitude."

35. Plaintiff asked Bekken not to talk to him in that tone.

36. Bekken responded by telling plaintiff he was fired and to "get the fuck out of here."

37. Plaintiff left the building as instructed and called his direct supervisor, Tony Drapak.

38. Tony Drapak told plaintiff to return to the building and take enough pictures to prove that the client's office was prepared for the incoming furniture.

39. Plaintiff returned to the office and began taking pictures.

40. Joe Bekken saw plaintiff taking pictures and demanded to know why he was in the building.

41. Plaintiff explained that Drapak had instructed him to take pictures.

42. Joe Bekken began screaming at plaintiff to leave the building.

43. Bekken also instructed the client representative to call security.

44. When plaintiff continued taking pictures, Joe Bekken physically pushed him down a hallway toward the freight elevator, all the while swearing at plaintiff.

45. The elevators opened and plaintiff got in the elevator with the security guards.

46. Plaintiff voluntarily left the building with the security guards.

47. Plaintiff then called Tony Drapak and told him what happened.

48. Plaintiff told Drapak he was going to call the police due to Bekken physically pushing him down the hall.

49. Tony Drapak told plaintiff that if he involved the police, Mike Munroe would fire him.

50. Plaintiff explained that what Bekken did to him was illegal and he needed to call the police.

51. Tony Drapak replied that he just wanted plaintiff to know that he had a decision to make, and if he called the police he would be fired.

52.     Plaintiff nevertheless called and talked to the police, who after talking with Bekken refused to press charges.

53.     The following Friday, Mike Munroe terminated plaintiff's employment.

54.     Upon information and belief, Joe Bekken's statements to Mike Munroe influenced Mike Munroe's decision to terminate plaintiff.

55.     Upon information and belief, white employees are not terminated under similar circumstances.

56.     Upon information and belief, Joe Bekken did not influence Mike Munroe to terminate white employees under similar conditions.

57.     Joe Bekken was not terminated.

58.     Upon information and belief, Joe Bekken was not even disciplined.

59.     After his termination, upon information and belief, Pickens-Kane has made disparaging remarks about plaintiff to third parties.

60.     Plaintiff has been unable to find a similar position.

61.     Plaintiff suffered economic and non-economic injuries as a result of the above-described conduct.

## COUNT I

### Race Discrimination Under 42 U.S.C. § 1981
(Against Defendants Pickens-Kane, Michael F. Munroe Jr. and Joseph Bekken)

62. Plaintiff incorporates by reference paragraphs 1-61 above.

63. Defendants discriminated against plaintiff due to his race, African-American, and he suffered economic and non-economic injuries as a result of this discrimination.

64. This discrimination included discrimination in pay.

65. This discrimination also included plaintiff's termination in that a motivating factor in his termination was plaintiff's race.

WHEREFORE, plaintiff requests:

   a. Defendants be adjudicated and declared to have violated 42 U.S.C. § 1981;

   b. Plaintiff be reinstated and/or awarded other appropriate equitable relief, such as front pay;

   c. Plaintiff be awarded appropriate damages to compensate him for any and all lost wages and benefits and/or any other appropriate relief to which he is entitled by virtue of defendant's violation of 42 U.S.C. § 1981;

   d. Plaintiff be awarded future lost earnings to compensate him for him loss;

   e. Plaintiff be awarded compensatory damages in an amount to be determined by a jury;

   f. Plaintiff be awarded punitive damages in an amount to be determined by a jury;

   g. Plaintiff be awarded pre-judgment interest;

   h. Plaintiff be awarded attorney's fees, costs and litigation expenses (including expert witness fees); and

   i. The Court grant such other and further relief as it deems just.

## COUNT II

**Retaliatory Discharge**
(Against Defendant Pickens-Kane)

66. Plaintiff incorporates by reference paragraphs 1-65 above.

67. A motivating factor in plaintiff's discharge was notifying the police of a potential crime.

68. Plaintiff's discharge was in contravention of clearly mandated public policies of the state of Illinois.

69. Defendant's retaliatory discharge was willful and wanton and/or malicious.

WHEREFORE, plaintiff requests:

a. Defendant be adjudicated and declared to be guilty of retaliatory discharge.

b. Plaintiff be reinstated and/or awarded other appropriate equitable relief;

c. Plaintiff be awarded appropriate damages to compensate for any and all lost wages and other benefits and/or any other appropriate relief to which he is entitled by virtue of defendant's retaliatory discharge;

d. Plaintiff be awarded compensatory damages in an appropriate amount and as allowed by law;

e. Plaintiff be awarded punitive damages in an appropriate amount and as allowed by law;

f. Plaintiff be awarded pre-judgment interest on the above damages; and

g. Plaintiff be granted such other and further relief as this Court deems just.

## COUNT III

### Tortious Interference with Business Expectancy
(Against Defendant Pickens-Kane)

70. Plaintiff incorporates by reference paragraphs 1-69 above.

71. Plaintiff had a reasonable expectation of entering into a valid business relationship when he applied for other positions after Pickens-Kane terminated his employment.

72. Pickens-Kane knew plaintiff had a reasonable expectancy of entering into a valid business relationship because plaintiff was no longer employed at Pickens-Kane and therefore need to find replacement employment.

73. Pickens-Kane also knew plaintiff had a reasonable expectancy of entering into a valid business relationship because prospective employers contacted Pickens-Kane about him.

74. Upon information and belief, Pickens-Kane prevented plaintiff from obtaining gainful employment elsewhere due to its negative statements about him.

75. Plaintiff was damaged by this interference as he has not been able to find replacement employment. He has also suffered emotionally.

WHEREFORE, plaintiff respectfully requests that:

    a. Defendant be adjudicated and declared to be guilty of tortious interference with business expectancy.

    b. Plaintiff be awarded compensatory damages in an appropriate amount and as allowed by law; and

    c. Plaintiff be awarded punitive damages in an appropriate amount and as allowed by law; and

    d. Plaintiff be granted such other and further relief as this Court deems just.

## COUNT IV

### Defamation
(Against Defendant Pickens-Kane)

76. Plaintiff incorporates by reference paragraphs 1-75 above.

77. Upon information and belief, Pickens-Kane intentionally made false statements about plaintiff's suitability as an employee to prospective employers.

78. These statements were publicized without privilege.

79. As a result, plaintiff has been damaged, and is unable to find replacement employment. He also suffered emotionally by these false comments and his inability to make a living.

WHEREFORE, plaintiff requests:

a. Defendant be adjudicated and declared to be guilty of defamation.

b. He be awarded compensatory damages in a n appropriate amount and as allowed by law; and

c. He be awarded punitive damages in an appropriate amount and as allowed by law; and

d. He be granted such other and further relief as this Court deems just.

## COUNT V

### Battery
(Against Defendant Joe Bekken)

80. Plaintiff incorporates by reference paragraphs 1-79 above.

81. Joe Bekken intentionally touched Plaintiff in an unauthorized and offensive manner.

WHEREFORE, Plaintiff requests that:

a. Joe Bekken be adjudicated and declared to have committed the tort of battery;

b. Plaintiff be awarded appropriate damages to compensate him for any and all lost wages and other benefits and/or any other appropriate relief to which he is entitled;

c. Plaintiff be awarded front pay to compensate him for his losses;

d. Plaintiff be awarded lost future earnings to compensate him for his loss;

e. That Plaintiff be awarded compensatory damages in an appropriate amount and as allowed by law;

f. Plaintiff be awarded punitive damages in an appropriate amount and as allowed by law;

g. Plaintiff be awarded pre-judgment interest on the above damages; and

h. Any other relief available at law or in equity deemed just.

A TRIAL BY JURY IS DEMANDED ON ALL COUNTS.

Respectfully submitted,

KEITH WATTS

/s/ Johanna J. Raimond
By his Attorney

Johanna J. Raimond
Law Offices of Johanna J. Raimond Ltd.
321 S. Plymouth Court, Suite 1515
Chicago, Illinois 60604
Phone: 312/235-6959
Fax: 312/469-8302
Counsel for Plaintiff